Ida ANNICELLI

v.

**TOWN OF SOUTH KINGSTOWN et al.**

No. 80–508–Appeal.

Supreme Court of Rhode Island.

July 13, 1983.

---

**2.** The indictment states that defendant committed the attempt by filing false documents.

Edward T. Hogan, Thomas S. Hogan, Donald J. Packer, Hogan & Hogan, East Providence, for plaintiff.

Robert B. Gates, Dennis J. Roberts II, Atty. Gen., Daniel J. Schatz, Sp. Asst. Atty. Gen., Providence, Jane L. Bloom, New York City, Harold Ward, Providence, Anthony C. Liotta, Acting Asst. U.S. Atty. Gen., Washington, D.C., for defendants.

## OPINION

KELLEHER, Justice.

This is a case of first impression in Rhode Island which pits a landowner's constitutional rights against the ecological primacy of a barrier beach. The defendant, town of South Kingstown (the town), appeals from the decision of a justice of the Superior Court granting the plaintiff, Ida Annicelli (Annicelli), declaratory relief from certain amendments to the town's zoning ordinance. As a result of those amendments, various segments of the town's shoreline were designated "High Flood Danger" districts (HFD zone). One such area encompassed Green Hill Beach where Annicelli's property is located. Classification of the beach as an HFD zone effectively precluded Annicelli from constructing a single-family dwelling on the land. The trial justice found that the HFD zone, as applied to Annicelli's property, constituted an indirect confiscatory taking without compensation in violation of articles V and XIV of the amendments to the United States Constitution and article I, section 16, of the Rhode Island Constitution.

In his decision, the trial justice concluded that the town was obliged to exercise its powers of eminent domain to compensate Annicelli. He determined that the effect of the HFD zone was to return the beach property to its natural state for the public benefit and that, under these circumstances, it was inappropriate for the town to exercise its police powers. However, the judgment entered by the trial justice was inconsistent with his decision. Rather than order compensation pursuant to condemnation proceedings, the judgment enjoined the town from enforcing the applicable provisions of the ordinance against Annicelli's property and further directed the building inspector to issue the requested permit.

After a thorough review of the record, we are of the opinion that Annicelli has in fact established an action of inverse condemnation against the town and thus must be compensated for a constructive "taking" of her property. Before expounding upon the rationale underlying this conclusion, we shall recapitulate the factual situation.

On May 8, 1975, Annicelli, an out-of-state resident, signed a purchase-and-sale agreement with the owner of real estate on Green Hill Beach for the purpose of constructing a single-family dwelling there. The stated purchase price was $16,750. Among other stipulations, the agreement provided that Annicelli would relieve the seller of any responsibility toward successfully obtaining "all necessary buildings, sanitation, and coastal resources permits." Three weeks after the agreement was signed, the town council adopted the amendments to the zoning ordinance creating the HFD zone which gave rise to the instant controversy.

Approximately five months after the amendments were adopted, Annicelli took title and possession of the land. Immediately thereafter, Annicelli applied to the

town building inspector for a permit to build a single-family dwelling on her property. She also applied for a permit from the Rhode Island Department of Health to construct an individual sewage-disposal system for her proposed dwelling. Although the permit from the health department was approved, the application for the building permit was denied on the ground that a single-family dwelling was not permitted in an HFD zone.

Rather than appeal the decision of the building inspector to the zoning board of review, Annicelli filed an action for declaratory judgment in the Superior Court on January 15, 1976. The trial justice denied a defense motion to dismiss the action for failure to exhaust administrative remedies. In denying the motion, the trial justice reasoned that the zoning board would have been powerless to grant Annicelli a special exception because none of the permitted uses within the HFD zone included residential dwellings. Indeed, § 14.53 of the ordinance, entitled "Uses and Structures Prohibited Within the HFD Zoning District," provides in part as follows:

"No residential dwelling designed or used for overnight human occupancy shall be constructed within the HFD Zoning District as defined herein. This prohibition shall apply even if the land within said HFD Zoning District is above the base flood elevation."

The trial justice further ruled that any attempt by Annicelli to obtain a variance as opposed to a special exception would have been a similarly futile exercise. The statute applicable at the time the action was brought authorized the board to grant a variance only for the reinstatement of a nonconforming use that was unavailable to Annicelli. It did not authorize so-called use variances. Entitled "An Act Relating to Zoning Ordinances for South Kingstown," ch. 101 of the 1973 Public Laws provided in § 18 that the zoning board of review shall have the power to:

"b) Grant a variance from the restrictions of the zoning ordinance other than use restrictions or requirements * * *.

"c) Grant a variance from the use regulations or requirements of the zoning ordinance only where application is made for reinstatement of a non-conforming use * * *."

The trial justice noted that P.L.1973, ch. 101, § 18, was amended by P.L.1976, ch. 11, § 1, subsequent to the filing date of Annicelli's complaint. The effect of the amendment was to eliminate the distinction between use variances and other types of variances, thereby empowering the board to grant the former under appropriate circumstances. Consequently, while her action was pending in Superior Court, Annicelli once again applied to the building inspector for a permit under the newly amended statute. To her chagrin she was once again summarily denied on the ground that the ordinance forbade such use of the property. Annicelli thereafter filed an amendment to her complaint, and trial commenced on June 13, 1977.

Not unexpectedly, Annicelli's witnesses indicated that the property was best suited for use as a single-family dwelling. This conclusion was based upon the belief that the permitted or excepted uses were completely impractical as applied to Annicelli's property because of the size and location of the lot and the nature of its topography. Permitted uses under § 14.41 and excepted uses under § 14.42 of the ordinance include, among others, a horticultural nursery or greenhouse, a park or playground, a wildlife area or nature preserve, or a golf course or marina; also allowed were the raising of crops and animals, the storing of commercial vehicles, and the repairing of boats. Annicelli's appraiser estimated that the property was worth $1,000 in its present state because none of the enumerated uses was practical and $1,000 was, as he put it, the "most anyone would pay * * * for a spot to sit on the beach to go swimming." The town's appraiser opined that the property was probably worth $8,500. However, he conceded that several of the uses were impractical while denying that Annicelli

was deprived of all reasonable or beneficial use of her property.

The testimony elicited at trial included an enlightened explanation of the role barrier beaches play in the ecological system. To comprehend fully and analyze fairly the matter before us, we shall review this testimony. In 1975 the town adopted an Environmental Master Plan (the plan) particularizing the town's recreational and environmental needs. The plan is part of the Comprehensive Community Plan that serves as the long-range planning device for the development of land-management policies in the town. It recommended that the town's barrier beaches, particularly Green Hill Beach, be classified as open space and conservation areas. To further these goals, the plan called for the creation of HFD zones to prevent construction of residences, to restrict uses that contribute to erosion, and to preclude development along the immediate ocean front. However, the plan did not counsel the town to condemn barrier beach-front property or raze homes presently situated on Green Hill Beach. It simply advised the town to prohibit further development of any undeveloped lots on Green Hill Beach because the dunes there were dangerously low in profile. Further development of Green Hill Beach, according to the plan's predictions, would compound the erosion already taking place, thereby creating a hazard to the public health and safety.

At trial, expert witnesses testified that a barrier beach is a narrow strip of unconsolidated material consisting of sand or cobble extending roughly parallel to and below the shoreline. The beach is formed by the marine processes of currents and wave action and is usually separated from the mainland by a salt or freshwater pond. The record clearly reveals to the untutored mind the crucial role that barrier beaches play in harboring shorelines from storm erosion.[1] In addition to performing this function, barrier beaches protect the coastal ponds behind them which are highly productive resources that serve as spawning grounds for various species of fish and other aquatic life.

According to the uncontradicted testimony, barrier beaches are extremely fragile ecological systems that cannot tolerate construction or foot and vehicular traffic because such activities destroy the dune grass that actually stabilizes the dune itself. When destabilization occurs, the barrier beach's ability to play the protective role designed for it by nature is compromised. The area in which Green Hill Beach is located has been designated a "developed" as opposed to an "undeveloped" barrier beach because of the presence of approximately thirty existing homes on the dune.

With this factual background in mind, we turn to the merits of the arguments before us. The threshold issue to be resolved is whether Annicelli is properly before this court in view of the fact that she failed to take an appeal first from the building inspector's decision to the zoning board of review. General Laws 1956 (1980 Reenactment) § 45–24–16 provides for appeals to the board of review from decisions of the building inspector. The town's authority to hear appeals is specifically provided in its zoning-enabling legislation that is contained in ch. 101 of the Public Laws of January 1973. As mentioned above, § 18 thereof, which was amended on March 24, 1976, by ch. 11 of the Public Laws of January 1976, also authorizes the board to grant variances upon appeal.

The town contends that the trial justice should have dismissed and denied Annicelli's petition for declaratory judgment on the ground that Annicelli failed to exhaust her administrative remedies as provided by statute. We disagree. The case that the town believes dispositive of this issue, *Nardi v. City of Providence*, 89 R.I. 437, 153 A.2d 136 (1959), is inapposite. In that case, the complainant seeking relief challenged the constitutionality of the ordinance only inso-

---

1. The testimony was particularly directed at the historical vulnerability of Green Hill Beach to the storm damage incidental to the great hurricanes of 1938 and 1954.

far as it applied to his property. Furthermore, the complainant in *Nardi* failed to apply for a permit under a claim of right to use his property in any way inconsistent with the provisions of the ordinance in question. In contrast, in the instant matter, Annicelli has challenged the ordinance as invalid on its face as well as in its application to her property. Additionally, as the trial justice noted, Annicelli, unlike the complaint in *Nardi,* asserted rights with respect to her property when she applied for the building permit that was subsequently denied.

In *Golden Gate Corp. v. Town of Narragansett,* 116 R.I. 552, 359 A.2d 321 (1976), we pointed out that the exhaustion-of-remedies principle adhered to in *Nardi* was applicable to cases in which a litigant contends only that an ordinance is unconstitutional in its application to his specific property. In such a situation, the court will avoid a needless judicial determination, where an application to the zoning board seeking a variance or an exception could meet with success.[2] *Id.* at 567, 359 A.2d at 329. However, we went on to point out that no reasonable basis exists for forestalling a judicial inquiry when the ordinance is challenged as patently invalid. In that situation, the issue must of necessity be resolved in court rather than at the administrative level. *Id.*

These sentiments were also echoed earlier in *Frank Ansuini, Inc. v. City of Cranston,* 107 R.I. 63, 264 A.2d 910 (1970), where we distinguished *Nardi* partly on the ground that the complainant failed to show any futility in appealing to the board of review. In *Ansuini,* as in the instant matter, it would have been futile for the complainant to have appealed to the board of review because the board lacked authority to grant the relief sought. "In such circumstances, the courts will not deny judicial relief on the ground that one invoking its protection

has first failed to do that which would be futile." *Id.* at 73, 264 A.2d at 915–16.

The principles enunciated in *Ansuini* and reiterated in *Golden Gate* are not rendered impertinent because the trial justice in the instant action ruled, not that the HFD zone was invalid on its face, but that it was unconstitutional only in its application to Annicelli's property. Consequently, the town is mistaken in asserting that the trial justice's decision was inconsistent with previous case law. The complaint sets forth the claim, and in the instant case Annicelli challenged the ordinance as patently unconstitutional on its face. Because by the clear and unambiguous language of the ordinance construction of single-family dwellings is flatly ruled out under all circumstances, we acquiesce with the trial justice's conclusion that any attempt to have the board of review grant a special exception or variance would have been futile.

■ Concerning the issue of Annicelli's standing to bring this case, we need only make brief reference to the well-established doctrine of equitable conversion. Annicelli became the equitable or beneficial owner of the property when she signed the purchase-and-sale agreement. As stated in the factual resume above, that agreement specifically placed the burden of obtaining all necessary permits on the purchaser and made no provision for rescission of the contract in the event of a zoning change.

The general rule to be applied when a zoning change occurs during the interim between the signing of the purchase-and-sale agreement and actual conveyance of the property has been articulated by Professor Corbin as follows:

"After a contract for the sale of land has been made, but before actual conveyance, it sometimes happens that a zoning ordinance is adopted limiting the uses to

2. In *Kraemer v. Zoning Board of Review of Warwick,* 98 R.I. 328, 331, 201 A.2d 643, 644 (1964), we explained that "[t]he variance contemplates a departure from the terms of the ordinance in order to preclude confiscation of property, while the exception contemplates a permitted use when under the terms of the ordinance the prescribed conditions therefor are met."

which the property may be put. * * * This change in the law may frustrate in part or in whole the purpose for which the purchaser agreed to buy the land. In the absence of some expression in the contract to the contrary, the risk of such a restriction by ordinance seems likely to be allocated to the purchaser." 6 Corbin, *Contracts* § 1361 at 492 (1962).

Heeding this advice, we have previously stated that one who has a binding contract to purchase property has standing to seek relief from a zoning ordinance. *Packham v. Zoning Board of Review of Cranston,* 103 R.I. 467, 472, 238 A.2d 387, 389–90 (1968). With this enunciation of the principle as our guide, we are led by the facts of this case to no other conclusion than that Annicelli was aggrieved by the zoning change and thus had standing to bring suit.

Having disposed of these initial questions, we turn to the gravamen of the controversy before us and determine whether the town has in fact unconstitutionally taken Annicelli's property for public use without compensation by its designation of Green Hill Beach as an HFD zone. The trial justice answered this question in the affirmative, ruling that the ordinance as applied to Annicelli's property "constitute[d] an indirect, confiscatory taking of her property without just compensation, in violation of the United States and Rhode Island Constitutions."

The Fifth Amendment to the United States Constitution provides that "[n]o person shall be * * * deprived of * * * property, without due process of law; nor shall private property be taken for public use, without just compensation." This provision applies to the states and their subdivisions by the due-process clause of the Fourteenth Amendment. The Rhode Island Constitution in art. I, sec. 16, states that "[p]rivate property shall not be taken for public uses, without just compensation." We have ruled that use regulations that are reasonably necessary to protect the public health and safety are permissible exercises of the police power which do not require compensation, *Milardo v. Coastal Resources Man-*

*agement Council of Rhode Island,* R.I., 434 A.2d 266, 268 (1981), provided that they do not become arbitrary, destructive, or confiscatory. *Bartlett v. Zoning Commission of Old Lyme,* 161 Conn. 24, 30, 282 A.2d 907, 910 (1971). Furthermore, we have recognized that a zoning ordinance that deprives an owner of all beneficial use of his property is confiscatory and requires compensation. *Milardo,* 434 A.2d at 268.

When all beneficial use of property is deprived by governmental restrictions, there is no question that an unconstitutional taking can occur even in the absence of a physical entry. *E & J Inc. v. Redevelopment Agency of Woonsocket,* R.I., 405 A.2d 1187, 1189 (1979). In such circumstances, an action in inverse condemnation lies because it permits recovery against a governmental entity that takes the property in fact without formally exercising the power of eminent domain. *Id.; see Thompson v. Tualatin Hills Park and Recreation District,* 496 F.Supp. 530, 539 (D.Or.1980); *Sundell v. Town of New London,* 119 N.H. 839, 845, 409 A.2d 1315, 1318 (1979). In other words, when a restriction is so great that the landowner ought not to bear the burden for the public good, the restriction is looked upon as a constructive taking. This is so even though the actual use has not been transferred to the government in the traditional sense of a taking. "Whether a taking has occurred depends upon whether 'the restriction practically or substantially renders the land useless for all reasonable purposes.'" *Just v. Marinette County,* 56 Wis.2d 7, 15, 201 N.W.2d 761, 767 (1972); *see Sundlun v. Zoning Board of Review of Pawtucket,* 50 R.I. 108, 113, 145 A. 451, 454 (1929).

Given these guidelines, our task in the instant case is to determine whether the amendments adopted by the town council meet the test of a constitutional exercise of the police power. We must balance the conflicting aims of the public interest in preserving barrier beaches in their natural state with Annicelli's asserted right to use her property as she pleases. Public rights may be protected by the exercise of the

police power unless, as outlined above, the damage to the property owner becomes overbearing and amounts to a confiscation. Thus, the distinction between the exercise of the police power and the power of eminent domain is the use to which the property is put and the degree of damage to the property owner. *Just v. Marinette County,* 56 Wis.2d at 15, 201 N.W.2d at 767.

■ Throughout our analysis we must keep in mind the caveat that pecuniary loss or diminution in value is not controlling on the issue of confiscation because a property owner does not have a vested property right in maximizing the value of his property. *See E & J Inc. v. Redevelopment Agency of Woonsocket,* R.I., 405 A.2d 1187, 1189 (1979). In *Golden Gate Corp. v. Town of Narragansett,* 116 R.I. 552, 566, 359 A.2d 321, 328 (1976), we said that a zoning ordinance is not confiscatory merely because the property cannot be put to its most profitable use. Recently, the Supreme Court in *Agins v. City of Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), denied a challenge to the constitutionality of an ordinance in a situation in which the plaintiff's five acres of land were limited to only five dwellings. The Court found that the ordinance did not prevent the best use of the land but merely limited it. Concerning the standard to be applied, the Court ruled that "[t]he application of a general zoning law to particular property effects a taking if the ordinance * * * denies an owner economically viable use of his land * * *." *Id.* at 260, 100 S.Ct. at 2141, 65 L.Ed.2d at 112.

In the instant controversy, the town contends that the denial of Annicelli's building permit constituted a valid exercise of the police power. The town's argument is based on its conclusions that the proposed use was unsafe, that the construction of a residence would create a nuisance, and that Annicelli failed to show that she had been denied all reasonable and beneficial use of the property. The trial justice rejected each of these contentions. We are reminded at this juncture that it is a well-settled principle that we shall not overturn the

rulings of the trial justice unless he overlooked or misconceived material evidence or was clearly wrong. *Sweetman v. Town of Cumberland,* 117 R.I. 134, 146, 364 A.2d 1277, 1286 (1976); *Camara v. City of Warwick,* 116 R.I. 395, 407, 358 A.2d 23, 31 (1976).

■ After reviewing the record, we cannot find fault with the trial justice's conclusions. Much of the transcript in this case is devoted to an exhaustive accounting of why each of the permissible or excepted uses was impractical as applied to Annicelli's property. As noted by the trial justice, these uses can only reasonably be envisioned on a much larger tract. Indeed, in numerous instances, the town's witness conceded that the uses were unavailable to Annicelli. There is no question that this case is not one of mere diminution in value or use of property. The record demonstrates to us that all reasonable or beneficial use of Annicelli's property has been rendered an impossibility; consequently, under the standards promulgated by the Supreme Court, Annicelli must be compensated.

Our determination that the town should have exercised its power of eminent domain rather than its police power is further premised on the fact that the overall purpose of the ordinance in question is to benefit the public welfare by protecting vital natural resources, here barrier beaches, and preserving them for posterity. We glean this purpose from the testimony at trial and the preamble of the ordinance, which states that the ordinance is designed to:

"A. Secure safety from * * * flood * * and other dangers from natural * * * disaster;

" * * * *

"H. Promote the conservation of open space, valuable natural resources and ecological features and prevent urban sprawl and wasteful land development practices * * *."

Preserving barrier beaches is a worthy environmental goal that the town may law-

fully pursue. However, as we have stated in our analysis above, the police power may properly regulate the use of property only where uncontrolled use would be harmful to the public. The instant controversy does not present a case in which a harmful use is prevented by the ordinance, such as the discharge of waste and pollutants into a "precariously balanced environment." *Milardo v. Coastal Resources Management Council of Rhode Island*, R.I., 434 A.2d 266, 269 (1981). The use to be prevented here, construction of a single-family dwelling in an area in which thirty such structures already exist, constitutes a taking for the public good rather than a taking to prevent a public harm. As Mr. Justice Holmes stated in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 416, 43 S.Ct. 158, 160, 67 L.Ed. 322, 326 (1922):

> "We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change."

Our ruling today that ecological or environmental legislation may constitute a taking when all beneficial use of the property is denied to the landowner to benefit the public welfare is in harmony with rulings involving similar fact situations in other jurisdictions. For example, in *Dooley v. Town Plan & Zoning Commission of Fairfield*, 151 Conn. 304, 197 A.2d 770 (1964), the court held that a zoning change designating the plaintiff's property as a flood-plain district was unreasonable and confiscatory as applied to his property. The permitted uses in *Dooley* were strikingly similar to those permitted by the ordinance in the instant case and just as impractical when applied to the property in question. The *Dooley* court concluded:

> "Where most of the value of a person's property has to be sacrificed so that community welfare may be served * * * the occasion is appropriate for the exercise of eminent domain." *Id.* at 312, 197 A.2d at 774.

Later, in *Chevron Oil Co. v. Zoning Board of Appeals of Shelton*, 170 Conn. 146, 151, 365 A.2d 387, 390 (1976), the court, citing *Dooley*, held:

> "An ordinance which permanently restricts the use of land for any reasonable purpose * * * goes beyond permissible regulation and amounts to 'practical confiscation.'"

Other cases that are in accord with these views include *MacGibbon v. Board of Appeals of Duxbury*, 347 Mass. 690, 200 N.E.2d 254 (1964); *State v. Johnson*, 265 A.2d 711 (Me.1970); *Morris County Land Improvement Co. v. The Township of Parsippany-Troy Hills*, 40 N.J. 539, 193 A.2d 232 (1963). Those cases each balanced the desirability of controlling development for the public good with the constitutional rights of the landowners involved. In each case, the respective courts found that the ordinances so restricted the use of the property for the public welfare that the owners were denied all reasonable use and a taking was recognized.

In conclusion, although the public interest in preserving barrier beaches is commendable, particularly in consideration of the vital role they play in preserving and protecting our shoreline, that interest must not overshadow a cognizance of the danger that the exercise of the police power can result in a taking of one's property. Here, where the plaintiff's property has been taken for the benefit of the community welfare, the occasion is appropriate for an award of just compensation.

Accordingly, the plaintiff's appeal is sustained in part. So much of the judgment that finds that there has been a taking is affirmed. That portion of the judgment that enjoins the town from enforcing its ordinance and orders the issuance of a building permit is hereby vacated. The case is remanded to the Superior Court for entry of a new judgment and further proceedings in accordance with this opinion, including a hearing at which a determination will be made as to the fair market value of Annicelli's property.