DECISION
In the instant appeal, Julia and Raymond Hall (collectively Plaintiffs) request that this Court invalidate the April 8, 2002 amendment to the South Kingstown Zoning Ordinance (Zoning Ordinance), which changed the zoning designation from R30[1] to RM[2] with respect to real property described as Lot 14 on Tax Assessor's Plat 40-2. Plaintiffs, who own property which lies in close proximity to the property involved in the zoning amendment, also claim that the amendment to the Zoning Ordinance constitutes a taking of their property and thus request just compensation. Plaintiffs further request attorney's fees. Defendant Warden's Pond Builder's Inc. (WPBI), the applicant in the application for the amendment to the Zoning Ordinance, has been granted permission to intervene. This Court has jurisdiction pursuant to G.L. 1956 §45-24-71.
 FACTS/TRAVEL
On December 14, 2001, WPBI simultaneously submitted applications for an amendment to the Town of South Kingstown Comprehensive Community Plan (Comprehensive Plan) and for an amendment to the Zoning Ordinance, with regards to the approximately 19 acre property located in South Kingstown at Kingstown Road and Saugatucket Road, and described as Lot 14 on Tax Assessor's Plat 40-2 (subject property). WPBI sought through these applications to change the Comprehensive Plan designation of the subject property from Medium Density Residential to High Density Residential and to change the zoning designation from R30 to RM. WPBI requested these amendments so that it could build on the subject property, 70 units of two-bedroom condominium housing for persons 55 years and older. Without the amendments, a maximum of 20 single family residences were permissible on the subject property.
The applications were scheduled to be reviewed by the Planning Board on January 22, 2002, and by the Town Council on February 25, 2002.[3]
Prior to the submission of completed applications, WPBI requested that the Planning Board review their applications on a pre-application basis. Accordingly, on November 28, 2001, the Technical Review Committee (TRC)[4] reviewed the applications and was generally supportive of the applications.
The TRC further considered the applications on December 27, 2001, at which time it unanimously voted to recommend (1) that the Planning Board approve the amendment to the Comprehensive Plan and (2) that the Planning Board recommend that the Town Council approve the amendment to the Zoning Ordinance. On January 2, 2002, the applications were further reviewed by the Town of South Kingstown Conservation Commission (Conservation Commission). The Conservation Commission supported the proposed zoning designation and found the "proposed use consistent with adjacent properties." (January 16, 2002 letter from Michael A. Rice, Chair, Conservation Commission to Henry Meyer, Chair, South Kingstown Planning Board.) However the Conservation Commission noted concerns with the proposed density and also noted that the project should be designed so as to "minimize loss of wildlife habitat." Id.
The Planning Board considered both applications at a public hearing on January 22, 2002, and had before it the aforementioned recommendations of the TRC and the Conservation Commission. Additionally, issues regarding drainage, wetlands, traffic impact, proposed density, and buffering were discussed.
On February 12, 2002, the Planning Board unanimously voted to approve the amendment to the Comprehensive Plan and to recommend that the Town Council amend the Zoning Ordinance. With regards to the zoning amendment, the Planning Board made the following Findings of Fact: the property is "situated within the Kingstown Road Special Management District"; the property "is in proximity to existing multi-household uses"; the "site is fully serviced by utilities"; "[u]nder the current zoning designation the site could support approximately 20 single-family homes"; the "proposed usage of the property is for a maximum of 70 two-bedroom condominiums. . .[t]he proposed density does not seek to maximize the use of the site as would be permitted under the RM zoning designation"; the proposed use is "consistent with existing land use pattern of the area and will not result in adverse impacts to Town services"; and the "proposed amendment has been reviewed by the Town's Technical Review Committee and Conservation Commission and is recommended by both." (February 12, 2002 Planning Board Minutes at 8.) With regards to the Comprehensive Plan, the Planning Board found:
 "Said amendment is found to be consistent with the Comprehensive Community Plan as follows:
 1. Overall Goal of the Housing Element: `To encourage a range of housing choices in order that the Town can continue to be a home to a vital mix of people.'
 2. Housing Element Policy 1.1 — `The Town supports providing housing opportunities for people of varying ages, lifestyles, and stages of the life cycle, including: singles, couples, single parents, families, senior citizens, the handicapped, and students.'
 3. Housing Element, Policy 1.3 — `The Town supports providing housing opportunities for year-round renters, first time buyers, and homeowners who need or choose to change their living arrangements due to lifecycle and/or altered physical and financial capabilities.'" Id.
With regards to the purposes of zoning, the Planning Board found that the
 "proposed amendment is consistent with the following general purposes of zoning as contained in RIGL 45-24-47, Rhode Island Zoning Enabling Act of 1991 as amended.
 1. `Promoting the public health, safety, and general welfare.' 8. `Promoting a balance of housing choices, for all income levels and groups, to assure the health, safety and welfare of all citizens and their right to affordable, accessible, safe and sanitary housing.'" Id.
Additionally, the Planning Board recommended as conditions of approval that the "use of the property should be limited to use code 12.3, Multi Household Land Development Project-Elderly Only"; that the "project density should not exceed 70 units"; and that the "project shall be subject to detailed review by the Planning Board as Major Land Development Project." Id.
The Planning Board, in a letter sent to WPBI's attorney, Matthew Callaghan, delineated the Planning Board's motion to approve the application to amend the Comprehensive Plan. (February 15, 2002 letter to Matthew Callaghan from Henry Meyer, Chair, Planning Board.) The Planning Board also sent to the Town Council, a letter which outlined the Planning Board's recommendation that the Town Council amend the Zoning Ordinance. (February 15, 2002 letter to The Honorable Town Council from Henry Meyer, Chair, Planning Board.) These letters were before the Town Council when it considered WPBI's applications at a public hearing on February 25, 2002. The Town Council also had a traffic impact study, an aerial map of the site, and a concept plan, before it.
Proper notice had been given of the meeting, and thus members of the public attended and expressed concerns regarding the density, the buffer, and traffic. Plaintiffs, who were present at the meeting, vocalized their disapproval of WPBI's applications. Plaintiffs indicated that they were going to file an appeal of the Planning Board's February 15, 2002 letters which contained the Planning Board's decisions regarding WPBI's applications.
Accordingly, on March 1, 2002, Plaintiffs filed an Application for an Appeal to the Zoning Board of Review. On March 6, 2002, the Building Official informed Plaintiffs that the Zoning Board did not have jurisdiction to hear their appeal, and thus the appeal was refused. Plaintiffs, on March 11, 2002, attempted to appeal the Building Official's refusal of their March 1, 2002 appeal. However, the Town Solicitor informed Plaintiffs, via letter, that the March 11, 2002 appeal was also improper due to lack of jurisdiction.
The Town Council further considered WPBI's applications at its March 11, 2002 meeting and April 8, 2002 meeting. Prior to the April 8, 2002 meeting, WPBI provided letters to the Town Council regarding existing waiting lists for senior housing in the area. WPBI also submitted a revised concept plan which increased the buffer from 50 feet to 100 feet along the northern and easterly border and decreased the number of units from 70 to 64.
At the April 8, 2002 meeting, the Town Council voted to approve both of WPBI's applications and incorporated the Planning Board's "Findings of Facts" and "Consistency with the Comprehensive Plan" in its approval of the zoning amendment. However, the Town Council amended the Planning Board's "Recommended Conditions of Approval." The Town Council stipulated the following "Conditions of Approval:" the "use of the property is limited to use code 12.3, Multi Household Land Development Project-Elderly Only"; the "project density is not to exceed 64 units"; the "project shall be subject to detailed review by the Planning Board as a Major Land Development Project"; and "a 100' natural buffer be maintained along the northern and easterly border of said property." (April 8, 2002 Town Council Minutes at 11.)
On May 8, 2002, Plaintiffs filed this timely appeal of the April 8, 2002 amendment to the Zoning Ordinance in which they request that this Court invalidate the amendment; award compensation for the alleged interference with their property rights; and grant attorney's fees and costs. Plaintiffs have not appealed the amendment to the Comprehensive Plan.
 STANDARD OF REVIEW
This Court possesses appellate review jurisdiction of an amendment to a zoning ordinance pursuant to G.L. 1956 § 45-24-71, which is entitled "Appeals -Appeal of enactment or of amendment to zoning ordinance." That statute provides in pertinent part:
 "(a) An appeal of an enactment of or an amendment to a zoning ordinance may be taken to the superior court for the county in which the municipality is situated by filing a complaint within thirty (30) days after the enactment or amendment has become effective. The appeal may be taken by an aggrieved party or by any legal resident or landowner of the municipality or by any group of residents or landowners whether or not incorporated, of the municipality. The appeal shall not stay the enforcement of the zoning ordinance, as enacted or amended, but the court may, in its discretion, grant a stay on appropriate terms, which may include the filing of a bond, and make other orders that it deems necessary for an equitable disposition of the appeal.
 (b) The complaint shall state with specificity the area or areas in which the enactment or amendment does not conform with the comprehensive plan and/or the manner in which it constitutes a taking of private property without just compensation.
 (c) The review shall be conducted by the court without a jury. The court shall first consider whether the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan. If the enactment or amendment is not in conformance with the comprehensive plan, then the court shall invalidate the enactment or the amendment, or those parts of the enactment or amendment which are not in conformance with the comprehensive plan. The court shall not revise the ordinance to conform with the comprehensive plan, but may suggest appropriate language as part of the court decision.
 (d) In the case of an aggrieved party, where the court has found that the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan, then the court shall next determine whether the enactment or amendment works as a taking of property from the aggrieved party. If the court determines that there has been a taking, the court shall remand the case to the legislative body of the municipality, with its findings that a taking has occurred, and order the municipality to either provide just compensation or rescind the enactment or amendment within thirty (30) days."
Although G.L. 1956 § 45-24-50(a) provides that a municipality has the authority to amend its zoning ordinances through action by its town council, § 45-24-50(b) requires that any such amendments be consistent with the town's comprehensive plan. Accordingly, § 45-24-71
provides for a cause of action against the town council for an amendment of the town's zoning ordinance which is not in conformance with the Comprehensive Plan, and it entitles this Court to invalidate an zoning amendment which does not so conform.
This Court is mindful that our Supreme Court has held that "the amendment of a zoning ordinance is an exercise of a legislative function by a town council and it enjoys a presumption of legality . . . [which] can be overcome only by competent evidence." See Verdecchia v. Johnston Town Council, 589 A.2d 830, 832 (R.I. 1991). Furthermore, the "presumption of validity includes the presumption that the zoning enactments were `in accordance with a comprehensive plan.'" D'Angelo v. Knights of Columbus Bldg. Ass'n, 89 R.I. 76, 83; 151 A.2d 495, 499 (R.I. 1959) (citations omitted). Thus, in order to succeed with an appeal under § 45-24-71, a plaintiff must meet the burden of showing "the area or areas in which the enactment or amendment does not conform with the comprehensive plan and/or the manner in which it constitutes a taking of private property without just compensation." G.L. 1956 § 45-24-71(b).
 THE AMENDMENT
When considering an appeal pursuant to § 45-24-71, this Court must apply a two part analysis. First, the Court must "consider whether the enactment or amendment of the zoning ordinance is in conformance with the comprehensive plan." G.L. 1956 § 45-24-71(c). If the amendment is not in conformance with the Comprehensive Plan, this Court may invalidate it. See id. Second, if this Court finds that the amendment is in conformance with the town's Comprehensive Plan, "then the court shall next determine whether the enactment or amendment works as a taking of property from the aggrieved party." G.L. 1956 § 45-24-71(d).
Plaintiffs have advanced several arguments in support of their appeal. Specifically, Plaintiffs argue that the amendment is not in conformance with the Comprehensive Plan; that the Planning Board's recommendation to the Town Council regarding the amendment failed to include the findings required by G.L. § 45-24-52; that they were unlawfully denied their right to appeal; that WPBI failed to follow the proper procedures for approval; and that the amendment constituted spot zoning. Plaintiffs also argue that the amendment constituted a taking. This Court addresses each argument below.
 Conformance with the Comprehensive Plan
Plaintiffs argue that the zoning amendment violates the Comprehensive Plan in several respects. Plaintiffs first argue that the amendment has no general consistency with the Comprehensive Plan. However, §45-24-71(b) requires Plaintiffs "to state with specificity the area or areas in which the enactment or amendment does not conform with the comprehensive plan." Thus, Plaintiffs' very broad assertion that the amendment has no general consistency with the Comprehensive Plan does not provide this Court with grounds to invalidate the amendment.
Plaintiffs, in their brief, also assert that the "vast increase in density allowed on this single lot failed to show any consistency whatsoever with the comprehensive plan and the zoning pattern in the area." However, this Court finds that the subject property's change of zoning to allow an increase in density is consistent with the Comprehensive Plan. The zoning amendment changed the zoning of the subject property from R30 to RM, and a review of the Comprehensive Plan reveals that properties zoned as RM are appropriate in areas designated as High Density Residential. See Comprehensive Plan at Element II § F(2)(a)(1), p. 44 (stating that High Density Residential "corresponds to the present provisions of the Zoning Ordinance for multi-family dwelling units in the RM-Residential Multifamily zoning district"). Thus, since the Comprehensive Plan was amended, such that the subject property was designated as High Density Residential, the subject property's zoning change to RM is consistent with the Comprehensive Plan.
Furthermore, this Court notes that the Town Council found that the subject property to be "consistent with existing land use pattern of the area" and "is in proximity to existing multi-household uses, Peace Dale Place, Peace Dale House and institutional uses servicing an elderly or handicapped population, South Bay Manor." (April 8, 2002 Town Council Minutes at 10.) Plaintiffs have not provided any evidence contrary to the Town's findings.
Plaintiffs next argue that the zoning amendment violates the section of the Comprehensive Plan which pertains to Special Management Districts. This Court notes that the subject property lies within the Kingstown Road Special Management District, which is a specific Special Management District created by the Comprehensive Plan. The Comprehensive Plan provides that all Special Management Districts share some common characteristics, including that "each area will have an overall conceptual master plan developed to act as a guideline for development regulations to follow." See Comprehensive Plan, Element II § F(4) at p. 50. At the time of Plaintiffs' appeal, an overall conceptual master plan had not yet been developed for the Kingstown Road Special Management District.
Plaintiffs argue that the amendment cannot be consistent with the conceptual master plan for the Kingstown Road Special Management District since no such plan exists. Thus, according to Plaintiffs, the amendment is not in conformance with the Comprehensive Plan. The Town Council and WPBI (collectively Defendants) argue that the lack of a conceptual master plan does not render the amendment inconsistent with the Comprehensive Plan since the conceptual master plan is not a mandatory requirement, and the amendment complies with Element II § F(4)(b) of the Comprehensive Plan, which outlines the Kingstown Road Special Management District.
Upon review of the Comprehensive Plan, this Court finds that the lack of a conceptual master plan does not render the amendment inconsistent with the Comprehensive Plan. The Comprehensive Plan provides that an overall conceptual master plan is to be developed to act as a "guideline for development regulations to follow." See Comprehensive Plan at Element II § F(4), p. 50. However, the overall conceptual master plan is not the only guideline for development regulations. Rather, Element II § F(4)(b) of the Comprehensive Plan, entitled "Kingstown Road Special Management District," delineates land use development policies and also provides a basis for regulations which will implement these policies. Specifically, that section outlines future land use polices and design principles that should be used in the preparation of land development regulations. Thus, this Court can determine whether the amendment is in conformance with the Comprehensive Plan, even without an overall master conceptual plan, since it can look to the future land polices and design principles as found in Element II § F(4)(b) of the Comprehensive Plan.
Except for their assertion that the amendment is not in conformance with the nonexistent conceptual master plan, Plaintiffs have not specified how the amendment is not in conformance with the Comprehensive Plan provisions dealing with the Kingstown Road Special Management Districts. Thus, they have not provided this Court with grounds to invalidate the amendment. Furthermore, this Court, in its own review, did not find the amendment inconsistent with the Comprehensive Plan. For example, Element II § F(4)(b) of the Comprehensive Plan provides that the
 "overall goal in creating the Kingstown Road Special Management District is to prevent the formation of a linear commercial strip development in favor of creating a planned mixed use center. The mixed use center is one in which the various elements and uses are developed in relation to each other and to surrounding uses and not as isolated elements." Id. at p. 55.
In the instant case, there is no indication that the proposed housing project will contribute to a linear commercial strip. Rather, the Town Council found that the proposed use was consistent with other uses in the area which included several other multi household uses and institutional uses servicing the elderly or handicapped population. Furthermore, the Comprehensive Plan permits residential uses, including areas for multi household dwellings, in the Kingstown Road Special Management District.See Comprehensive Plan at Element II § F(4)(b), p. 56-57 (stating that [w]ithin the Residential portion of the [Kingstown Road Special Management] District . . . [t]hose areas designated as High Density Residential . . . are primarily intended to provide areas for multi household dwellings").
Based upon the above, Plaintiffs have not shown that the amendment is not in conformance with the Comprehensive Plan. Since there is a presumption that amendments are in accordance with the Comprehensive Plan, and Plaintiffs have not provided any evidence to the contrary, this Court finds that the amendment is in conformance with the Comprehensive Plan. See D'Angelo v. Knights of Columbus Bldg. Ass'n, 89 R.I. 76, 83;151 A.2d 495, 499 (R.I. 1959) (holding that there is a presumption that "zoning enactments were `in accordance with a comprehensive plan.'");see also Verdecchia v. Johnston Town Council, 589 A.2d 830, 832 (R.I. 1991) (holding that an amendment to a zoning ordinance "enjoys a presumption of legality . . . [which] can be overcome only by competent evidence").
Plaintiffs have advanced additional arguments in support of their appeal. However, these arguments, which are discussed below, may be easily disposed of since they do not specifically address the consistency of the amendment with the Comprehensive Plan. Thus, they do not provide this Court with grounds to invalidate the amendment since this Court, pursuant to § 45-24-71, is entitled to invalidate a zoning amendment only if it finds that the amendment is not in conformance with the Comprehensive Plan.
 Planning Board Recommendation
In support of their appeal, Plaintiffs also argue that the Planning Board did not comply with the provisions of § 45-24-52. That section provides that the Planning Board's recommendation concerning an amendment to a zoning ordinance should "(1)[i]nclude a statement on the general consistency of the proposal with the comprehensive plan of the city or town, including the goals and policies statement, the implementation program, and all other applicable elements of the comprehensive plan" and "(2) [i]nclude a demonstration of recognition and consideration of each of the applicable purposes of zoning, as presented in § 45-24-30." According to Plaintiffs, the Planning Board failed to consider the sixteen purposes of zoning, but rather considered only two of the purposes. Plaintiffs also argue that the Planning Board's recommendation did not address whether the amendment was in conformance with the goals and policies statement of the Comprehensive Plan and that the recommendation ignored the implementation program. Additionally, Plaintiffs assert that the Planning Board ignored the fact that the proposed amendment was in conflict with the Comprehensive Plan's designation of the subject property as Medium Density Residential.
Conversely, Defendants argue that the Planning Board's statement was sufficient. However, Defendants argue that any insufficiency in the Planning Board's recommendation does not affect the validity of the amendment.
This Court notes that although the Planning Board's recommendation could have been more detailed, it was sufficient to comply with the requirements of § 45-24-52. That statute does not require the Planning Board to address every purpose of zoning; rather it only requires "demonstration of recognition and consideration of each of theapplicable purposes of zoning." (emphasis added). Furthermore, when the Planning Board's recommendation is read in its entirely, the Planning Board addressed the requisite aspects of the Comprehensive Plan. Finally, at the time of its recommendation regarding the amendment, the Planning Board also approved the simultaneous application for a Comprehensive Plan amendment. Thus the Planning Board did not need to state the obvious — that the amendment would be in conflict with the Comprehensive Plan unless the Comprehensive Plan was also amended.
Moreover, pursuant to § 45-24-71, this Court is entitled to invalidate a zoning amendment only if it is not in conformance with the Comprehensive Plan. Thus, even if this Court were to find that the Planning Board's recommendation did not meet the requirements of §45-24-52, Plaintiffs have not directed this Court to any portion of the Comprehensive Plan which would be violated by any such failure on the part of the Planning Board. Accordingly, Plaintiffs have not met their burden.
 Denial of Appeals
Plaintiffs further argue that they were twice denied the right to appeal to the Zoning Board of Review. Plaintiffs argue that (1) the Building Official wrongfully denied them their right to appeal the decisions of the Planning Board and (2) the Building Official wrongfully denied them their right to appeal his refusal of their initial appeal. In response, Defendants assert that the Zoning Board, acting as the Board of Appeals, does not have the jurisdiction to review the Planning Board's recommendation on a zoning amendment.
This Court does not have the jurisdiction under Chapters 23 or 24 of Title 45 to consider whether or not the Zoning Board had jurisdiction to consider Plaintiffs' appeals, since the Zoning Board has not issued an opinion for this Court to review. This Court has been granted limited jurisdiction under Chapters 23 and 24 of Title 45, under which this Court's jurisdiction does not include the ability here to review the actions of the Building Official.
Nevertheless, this Court's resolution of whether or not the Zoning Board had jurisdiction to hear Plaintiffs' appeals does not affect the result of this appeal since, pursuant to § 45-24-71, this Court is entitled to invalidate a zoning amendment only if the amendment is not in conformance with the Comprehensive Plan. Even assuming arguendo that Plaintiffs were wrongfully denied their right to appeal, this Court still is not entitled to invalidate the amendment unless Plaintiffs show that it is not in conformance with the Comprehensive Plan, and Plaintiffs have not made such a showing.
 Precedence of Approvals
Plaintiffs further argue that WPBI failed to follow the proper procedures in obtaining the amendment. Plaintiffs argue that by obtaining a zoning amendment before gaining conditional approval from Planning Board for the first stage of Major Land Development Review, WPBI violated G.L. 1956 § 45-23-61.[5] Plaintiffs also assert that the amendment was approved in violation of § 505.1 D(5) of the Zoning Ordinance[6]
since WPBI did not undergo the requisite Development Plan Review, and thus the Town Council approved the amendment without the Planning Board's Development Plan Review recommendation. Plaintiffs argue that as a result of these procedural violations, no project based limitation was placed upon the property. However, this Court notes that the Town Council stipulated the following conditions of approval: "use of the property is limited to use code 12.3, Multi Household Land Development Project-Elderly Only"; the "project density is not to exceed 64 units"; the "project shall be subject to detailed review by the Planning Board as a Major Land Development Project"; and "a 100' natural buffer be maintained along the northern and easterly border of said property." (April 8, 2002 Town Council Minutes at 11.)
Defendants argue that § 45-23-61 and § 505.1 D(5) of the Zoning Ordinance were not applicable to WPBI since the proposed development was not yet ripe for review by the Planning Board. According to Defendants, the Planning Board's review of the development as either a Major Land Development or Development Plan Review was premature until WPBI obtained an amendment to the Comprehensive Plan.
This Court notes that Plaintiffs have not argued that any procedural violations on the part WPBI and/or the Town Council, rendered the amendment inconsistent with the Comprehensive Plan. Thus, even assuming arguendo, that WPBI and/or the Town Council did violate the requisite "precedence of approvals," this Court, pursuant to § 45-24-71, may not invalidate the amendment unless those violations rendered the amendment inconsistent with the Comprehensive Plan. Accordingly, since Plaintiffs have not met their burden to show that WPBI's alleged violations rendered the amendment inconsistent with the Comprehensive Plan, the alleged procedural violations do not provide this Court with grounds to invalidate the amendment.
 Spot zoning
Plaintiffs further argue that the singling out of the subject premises for re-zoning constitutes illegal spot zoning. Defendants argue that Plaintiffs cannot prove that the amendment violates the Comprehensive Plan, and thus the amendment does not constitute illegal spot zoning.
Our Supreme Court has defined spot zoning as the "special and limited treatment of a small area inconsistent with the treatment accorded to the surrounding property." D'Angelo v. Knights of Columbus Bldg. Ass'n,89 R.I. 76, 83; 151 A.2d 495, 499 (R.I. 1959). This Court notes that the treatment of the subject premises was not inconsistent with the surrounding property. Rather, a review of the Zoning Map reveals that some of the properties in close proximity are also zoned as RM. However, assuming arguendo that the amendment constituted spot zoning, "[t]here is valid spot zoning and invalid spot zoning. The fact that a small portion of land is involved in a legislative action does not make it ipso facto illegal spot zoning." Carpionato v. Town Council of North Providence,104 R.I. 490, 494-95, 244 A.2d 861, 863 (R.I. 1968). Instead, the "crucial test for determining if an amendment to a zoning ordinance constitutes illegal spot zoning depends upon whether its enactment violates a municipality's comprehensive plan." Id. Thus, since this Court has not found the amendment to violate the Comprehensive Plan, the amendment does not constitute illegal spot zoning.
 TAKING
Since this Court has determined that the amendment is in conformance with the Comprehensive Plan, this Court must determine whether the amendment constituted a taking of Plaintiffs' property. Plaintiffs argue that they reside in close proximity to the subject property, and that the amendment has resulted in the devaluation of their property. Thus, Plaintiffs seek compensation from the Town for their losses.
The Rhode Island Supreme Court held that a "regulatory taking may result from `a radical curtailment of a landowner's freedom to make use of his or her land; that is, by regulatory action which is neither a physical invasion nor a physical restraint.'" Alegria v. Keeney,687 A.2d 1249, 1252 (R.I. 1997) (citations omitted). Regulatory takings are "(1) `regulations that compel the property owner to suffer a physical `invasion' of his property' and (2) `regulations that deny all economically beneficial or productive use of land.'" Woodland Manor IIIAssocs. v. Keeney, 713 A.2d 806, 811 (R.I. 1998) (quoting Lucas v. SouthCarolina Coastal Council, 505 U.S. 1003, 1015; 112 S.Ct. 2886, 2893; 120 L.Ed.2d 798, 812-13 (1992)). A zoning ordinance that "deprives an owner of all beneficial use of his property is confiscatory and requires compensation." Annicelli v. South Kingstown, 463 A.2d 133, 139 (R.I. 1983). In the instant case, Plaintiffs have only alleged that their property has been devalued as a result of the amendment. They have not alleged that the amendment resulted in a physical invasion of their property or that it deprived them of all economically beneficial or productive use their land. Thus, this Court finds that the amendment did not constitute a taking of Plaintiffs' property, and Plaintiffs are not entitled to any compensation.
 ATTORNEY'S FEES
Plaintiffs have requested attorney's fees. This Court has discretion to grant attorney's fees pursuant to § 45-24-71(f) which provides: "[t]he court may, in its discretion, upon the motion of the parties or on its own motion, award reasonable attorney's fees to any party to an appeal, including a municipality." However, in light of this Court's decision, this Court declines to award attorney's fees to Plaintiffs.
 CONCLUSION
Based upon the reasons set forth above, the amendment of the Zoning Ordinance, which changed the zoning designation from R30 to RM with respect to real property described as Lot 14 on Tax Assessor's Plat 40-2, is upheld. Furthermore, this Court holds that the amendment did not constitute a taking of Plaintiffs' property. Plaintiffs' request for attorney's fees is denied.
Counsel for Defendants shall submit the appropriate judgment for entry.
[1] R30 zoning districts are located in the Medium Density Residential District. Single-household detached units are the predominant type of housing in R-30 districts, although duplexes are allowed by special use permit. See South Kingstown Zoning Ordinance § 101 A. A residential density of up to 1.45 dwelling units per acre is permissible in a R-30 district. See id.
[2] RM zoning districts are located in the Residential Multi-Household District. Most types of apartment and condominium projects and individual multi-unit buildings are suitable for a RM district. See South Kingstown Zoning Ordinance § 101 A. An average residential density greater than 4.35 but less than 7.71 dwelling units per ace is permissible in a RM district. See id.
[3] An amendment to the Comprehensive Plan requires approval by both the Planning Board and the Town Council. See Procedure for Amendments to the Comprehensive Plan. An amendment to the Zoning Ordinance requires ultimate approval only by the Town Council. See South Kingstown Zoning Ordinance § 1001. However, before the Town Council may consider an amendment to the Zoning Ordinance, the matter must first be referred to the Planning Board for study and recommendation, and the Planning Board in turn shall seek the advice of the Planning Department. See id. The Planning Board must submit its findings and recommendations to the Town Council, and upon receipt of such findings and recommendations, the Town Council shall then a hold a public hearing to consider the amendment.See id.
[4] The Technical Review Committee (TRC), a committee appointed by the Planning Board, is entitled to review a zone change amendment upon referral from the Planning Board. See Town of South Kingstown Subdivision and Land Development Regulations Article XI B 1-3. TRC recommendations are advisory and not binding on the Planning Board. See id. Rather, it is the Planning Board that must make the final recommendation to the Town Council regarding zoning changes. See id.
[5] G.L. 1956 § 45-23-61 provides that
 "[w]here an applicant requires both planning board approval and council approval for a zoning ordinance or zoning map change, the applicant shall first obtain an advisory recommendation on the zoning change from the planning board, as well as conditional planning board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain a conditional zoning change from the council, and then return to the planning board for subsequent required approval"
[6] Section 505.1 D 5 of the Zoning Ordinance provides:
 "Any uses or facilities listed in Section 505.1(B) requiring a special use permit, a variance, a zoning ordinance amendment and/or a zoning map change under the Zoning Ordinance shall be subject to development plan review conducted by the TRC or Planning Board prior to the hearing of the permitting authority, provided that such review shall be advisory to the permitting authority. If the permitting authority is required by this Ordinance or by any other applicable provision of law to conduct a public hearing on said application within a prescribed period of time, the permitting authority shall not close the public hearing and shall not act upon the application until such time as a recommendation has been received from the TRC or Planning Board."