DECISION
VicGenKa Realty, LLC ("VicGenKa") brings this appeal from a decision of the Zoning Board of Review of the Town of Johnston ("Zoning Board") denying VicGenKa's application for dimensional variances. Jurisdiction is pursuant to G.L. 1956 § 45-24-69. For the reasons set forth herein, this Court remands this matter to the Zoning Board for further proceedings consistent with this opinion.
 I Facts and Travel
VicGenKa purchased Assessor's Plat 45-1, Lot 79, a 5137 square foot substandard lot of record on Ridgeway Avenue in Johnston, Rhode Island, in 2007. (Decision at 1.) This property is in an R-40 residential zone that requires a minimum lot size of 40,000 square feet for residences. Johnston, R.I., Zoning Ordinances, Art. III, Sec. F, Table III (1994.) Nurseries, greenhouses, and crop or animal raising operations also are permitted in R-40 zones in Johnston, but these activities require a minimum lot size of 120,000 square feet. Id. The lot is served by public water, although various neighbors have wells, both operational and inoperative. (09/27/2007 Tr. at 9; 01/31/2008 Tr. at 20, 28-29, 40-41.) The Department of Environmental *Page 2 
Management approved VicGenKa's proposed septic system design before VicGenKa brought its application for dimensional relief to the Zoning Board. (09/27/2007 Tr. at 12.)
The setback requirements for the zone — 40 feet in front and 75 feet in back — exceed the entire depth of the lot, which is 100 feet deep. Johnston, R.I., Zoning Ordinances, Art. III, Sec. F, Table III. In addition, the side setbacks — 35 feet on either side of a house — exceed the entire width of the lot, which is only a little more than 51 feet wide. Id. Due to the small size of the lot, VicGenKa would require variances as to both setbacks and total square footage in order to build any house on the lot. VicGenKa planned a 1536 square foot, three-bedroom, single-family house with a 768 square foot "footprint" for its lot. (Decision at 1; 09/27/2007 Tr. at 6.) If the house were built as planned, the driveway would be only two feet from the property line, and the Department of Environmental Management-approved septic system would be only approximately ten feet from the property line. (01/31/2008 Tr. at 46, 53.)
VicGenKa applied for dimensional variances as to both the total area of the lot and the setback requirements. (Application at 3.) The Zoning Board held a hearing on VicGenKa's application on September 27, 2007. VicGenKa's real estate expert, Mr. William Coyle, testified that building a house on Appellant's lot would not alter the general character of the surrounding area and that many houses in the neighborhood sit on lots smaller than 40,000 square feet. (09/27/2007 Tr. at 23-24, 27.) Board members pointed out that many abutters' lots and neighboring lots, while smaller than 40,000 square feet, nonetheless were larger than VicGenKa's lot. (09/27/2007 Tr. at 24.) Testimony revealed that some of the neighborhood's small lots were eligible for merger with adjacent lots but had not been merged. (09/27/2007 Tr. at 22-23.) One of VicGenKa's principals testified that the Appellant would be deprived of all use of the property if the Town refused to grant the requested variances. (09/27/2007 Tr. at 6.) *Page 3 
Because the Zoning Board wished to hear from a professional engineer on the topic of placement of neighboring wells, the hearing was continued until November 29, 2007. (09/27/2007 Tr. at 12.) The November 2007 hearing was cut short because VicGenKa's witness, a professional engineer, did not submit exhibits early enough for the Zoning Board members to peruse them prior to the meeting. (11/29/2007 Tr. at 9.) The hearing reconvened on January 31, 2008, at which time the Zoning Board members voted to deny VicGenKa's application for zoning variances. (Decision at 1, 3.)
At the January 2008 hearing, Johnston Mayor Polisena addressed the Zoning Board to express his dismay at the practice of granting variances to build houses upon "postage-stamp-sized lots." (See 01/31/2008 Tr. at 1-15.) He professed to be working with other town leaders to change a "loophole" which allows "developers and land speculators . . . [to come] to our Town with one motive, and that motive is for profit, and profit, only [sic]." (01/31/2008 Tr. at 3-4.) The Mayor assured the Zoning Board that it need not grant variances out of fear of the costs of litigation. (01/31/2008 Tr. at 9, 15.) The Mayor's comments met with appreciation from the Zoning Board. (See, e.g.
01/31/2008 Tr. at 11 ("MR. FASCIA: I'd like to take this opportunity to support you in this point of view.")) The Zoning Board Chair commented:
 Mayor Polisena, we surely will support you on this, and the thing is, if you don't mind going to Court, we know it's expensive, but if that's what the Town wants, and I do agree, these 5,000-square-foot lots that are in a 40,000 zone are just not appropriate in any way, shape, or form. (01/31/2008 Tr. at 15.)
At the Appellant's attorney's request, the Chair recused himself from voting. (01/31/2008 Tr. at 56-59.) In September 2007 and January 2008, an abutter suggested that having an abutter purchase VicGenKa's lot or joining VicGenKa's lot with another undeveloped lot adjacent to it were possible solutions. (09/27/2007 Tr. at 48-49; 01/31/2008 Tr. at 64.) *Page 4 
 II Sufficiency of the Zoning Board's Written Decision
Because the Zoning Board's written decision is so deficient as to make judicial review impossible, this Court remands this matter to the Zoning Board for clarification of its findings of fact and conclusions of law. Zoning boards sitting in a quasi-judicial capacity must set forth findings of fact and conclusions of law in each case. G.L. 1956 § 45-24-61; Kaveny v. Town of CumberlandZoning Bd. of Review, 875 A.2d 1, 8 (R.I. 2005) (quotingSciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001)) (other citations omitted). More than mere rote recitations of the factors to be weighed, these findings and conclusions serve the important function of facilitating judicial review. VonBernuth v. Zoning Bd. of Review,770 A.2d 396, 401 (R.I. 2001) (citations omitted). A zoning board's findings of fact and conclusions of law make its decision "susceptible of judicial review" and allow the court to determine whether the decision is "clearly erroneous in view of the reliable, probative, and substantial evidence[,]" "affected by other error of law[,]" "arbitrary or capricious or characterized by abuse of discretion[,]" or "[i]n violation of constitutional, statutory, or ordinance provisions." Section 45-24-69(d); von Bernuth,770 A.2d at 401. When a zoning board's findings and conclusions are so deficient as to hinder judicial review, "`the [C]ourt will not search the record for supporting evidence or decide for itself what is proper in the circumstances.'" Kaveny,875 A.2d at 8 (quoting von Bernuth, 770 A.2d at 401) (other citations omitted).
A zoning board's decision must not only state its findings and conclusions, but also explicate its reasons for reaching those findings and conclusions. Irish P'ship v. Rommel,518 A.2d 356, 358 (R.I. 1986) (citations omitted). As our State Supreme Court has explained:
 [R]easons are so powerful that the requirement has been imposed with remarkable uniformity by virtually all federal and state courts, *Page 5 
irrespective of a statutory requirement. The reasons have to do with facilitating judicial review, avoiding judicial usurpation of administrative functions, assuring more careful administrative consideration, helping parties plan their cases for rehearings and judicial review, and keeping agencies within their jurisdiction. Id. (quoting Hooper v. Goldstein, 104 R.I. 32, 44; 241 A.2d 809, 815 (1968) (internal quotations omitted)).
Decisions that are "conclusional" rather than explicative do not aid the Court in its review. See von Bernuth,770 A.2d at 402. Thus, it is essential to the judicial task that zoning boards support each conclusion of law with appropriate findings of fact. Id.
From examining the Zoning Board's decision in this case, the Court cannot discern how the Zoning Board arrived at some conclusions; thus, it cannot judge whether the Board's decision was clearly erroneous, arbitrary, capricious, or an abuse of discretion, as the Appellant contends. See section 45-24-69(d.) For example, in Section C of the Zoning Board's decision, Board Member Anzelone finds that "Applicant was trying to realize greater financial gain." (Decision at 2.) However, the decision does not reveal what facts led to this finding. Further, Section D of the decision, which appears to contain the Zoning Board's conclusions of law, states that "[t]he hardship is the result of action of the applicant and results primarily from the desire of the applicant to realize greater financial gain[.]" (Decision at 3.) This Court cannot review the case unless the decision indicates why the Zoning Board reached the conclusion that it did. As noted above, the Court will not search the record for the Zoning Board's reasoning where the Zoning Board fails to state adequate findings and conclusions.Kaveny, 875 A.2d at 8 (quoting von Bernuth,518 A.2d at 358-59) (other citations omitted).
Similarly, the Zoning Board concludes that VicGenKa's hardship does not amount to more than a mere inconvenience. (Decision at 3.) However, the decision does not reveal how the Zoning Board arrived at this conclusion and there are no findings of fact that support this *Page 6 
conclusion. This finding is so conclusional as to hinder judicial review. In addition, the conclusions of law in Section D of the Zoning Board's decision appear to be boilerplate language.See, e.g. Marsocci v. Pilozzi, No. PC-03-2254, slip op. at 5 (R.I. Super. June 2, 2006) (Superior Court case quoting Town of Johnston Board of Zoning Review conclusions of law that are almost identical to the conclusions of law in the Zoning Board decision in this case). To aid judicial review, conclusions of law must be more than a boilerplate "recital of a litany."Sciacca, 769 A.2d at 585 (quoting Irish P'ship,518 A.2d at 358-59).
The Court's singling out of these two instances as examples does not limit its holding to these two examples. It is incumbent upon the Zoning Board to ensure that each and every conclusion is supported by factual findings. The Court remands this matter to the Zoning Board for clarification of its decision consistent with the rules explained herein.
 III VicGenKa's Inverse Condemnation Claim
Our holding in this case — that the Zoning Board's decision is deficient and that the matter must be remanded to the board — makes it unnecessary for this Court to reach the Appellant's constitutional claim. In addition, VicGenKa's regulatory taking claim is not properly before the Court in an appeal taken from a decision of a zoning board pursuant to § 45-24-69. See WilliamsonCounty Reg'l Planning Comm'n v. Hamilton Bank,473 U.S. 172, 194 (1985) (holding that an inverse condemnation claim is not ripe until landowner has pursued appropriate procedures to obtain just compensation for taking); Sciacca,769 A.2d at 582 (holding that Supreme Court confines its review of zoning appeals to "whether the trial justice acted within his authority as set forth in § 45-24-69"); see alsoLandfill Res. Recovery, Inc. v. Dep't of Envtl. Mgmt.,512 A.2d 866, 869 (R.I. 1986) (holding that the scope of Superior Court *Page 7 
review of an Administrative Procedures Act case was limited by statute but that petitioners could raise inverse condemnation claim in a separate proceeding). Nonetheless, because this issue may appear before this Court again, this Court will address Appellant's inverse condemnation claim for purposes of discussion.
An inverse condemnation results when application of a zoning ordinance deprives an owner of all beneficial use of his property. U.S. Const. amend. V, XIV; R.I. Const. art. I, § 16;Annicelli v. Town of South Kingstown,463 A.2d 133, 139 (R.I. 1983.) Deprivation of all beneficial use means that a government regulation — in this case, the zoning ordinance — leaves the landowner with no practical options for using the land. Id. at 140 (holding that state agency confiscated property where regulation left lot owner with permitted but highly impractical uses for her land).
It appears that the Zoning Board may have effectuated a regulatory taking for the following reasons. The record reveals that VicGenKa's property is zoned for residential use and that the Department of Environmental Management has approved VicGenKa's plans for a septic system. This lot appears to be "buildable" but for the Zoning Board's denial of dimensional relief. Furthermore, a single-family residence appears to be the only purpose for which the property is zoned or suited, aside from the seemingly impractical farming and animal husbandry activities described above which would require even greater dimensional relief. One of VicGenKa's principals testified that it could make no use of the property other than construction of a house. The Zoning Board does not state, either at the hearings or in its decision, what beneficial use would be left in the property without the requested variances.
The transcript from the Zoning Board's January 2008 hearing makes clear that public sentiment in Johnston is against the approval of dimensional variances. However, whatever the *Page 8 
political realities and public sentiments, the Zoning Board has an obligation to safeguard the constitutional rights of petitioners who appear before it. Moreover, the Zoning Board has the authority to protect landowners' constitutional rights by using variances to protect landowners from the deprivation of all beneficial use of their land. Denton v. Zoning Board of Review,86 R.I. 219, 221; 133 A.2d 718, 719 (1957.) The record shows that the Zoning Board is dangerously close to confiscating Appellant's property in violation the Fifth andFourteenth Amendments of the United States Constitution, unless there is beneficial use left in the land that is not apparent from the record or the decision. See U.S. Const. amend. V, XIV; R.I. Const. art. I, § 16; Annicelli, 463 A.2d at 139. However, the Court cannot evaluate the Zoning Board's conclusions on the issues of beneficial use and inconvenience to the landowner because the Zoning Board does not explain its reasoning in its decision.
 IV Conclusion
For the reasons state above, this matter is remanded to the Zoning Board of Review of the Town of Johnston for proceedings consistent with this opinion. This Court will retain jurisdiction of this proceeding on appeal, should any party wish to appeal the Zoning Board's revised decision.