DECISION
This is an action pursuant to the Uniform Declaratory Judgment Act, G.L. 1956 §§ 9-30-1 to 9-30-16, arising out of a proposed commercial, retail, and residential development in the Town of North Smithfield, Rhode Island. Plaintiffs seek a declaration from this Court that § 5.4.12 of the North Smithfield Zoning Ordinance is in excess of the authority granted by the Zoning Enabling Act, G.L. 1956 §§ 45-24-27 to 45-24-72. In addition, they seek a determination that the permits issued to Defendant Bucci Development, Inc. to develop the Dowling Village project are "null and void ab initio" because they were issued under the allegedly invalid ordinance. (Pl's Third Am. Compl. ¶ 106, Aug. 1, 2006.)[1]
Before the Court are cross motions for summary judgment filed by the Plaintiffs and by Defendant Bucci Development, Inc. on Plaintiffs' claim for declaratory relief.
 Facts/Travel
The Parties
Plaintiff Lisa Gagnon (Gagnon) is an individual who lives near the site of the proposed project and who alleges that the value of her property will be adversely affected by the development. (Pl. Third. Am. Compl. ¶ 1, 91.) Plaintiff Valley Alliance for Smart Growth, Inc. (Valley Alliance) is a non-profit corporation whose mission is to pursue responsible development "that balances economic growth with the protection of our rural landscape, historic culture, and quality of life." Id. ¶ 89. Defendant Bucci Development, Inc. (Bucci) is a corporation which seeks to build "Dowling Village," a commercial, retail, and residential development in North Smithfield. Id. ¶ 23. Also Defendants in this suit are the various members of the Town of North Smithfield Planning Board, Zoning Board of Review, and Town Council, as well as the town's Building and Zoning Official (Town Defendants).
The rest of the Defendants are parties who were joined in this lawsuit because a determination that § 5.4.12 of the North Smithfield Zoning Ordinance (Zoning Ordinance) is invalid could materially affect their interests. They consist of persons who or entities which have an interest in real estate that was or is being developed under § 5.4.12. (Status Rept. on Title Search and Service of Am. Compl., July 25, 2006.) In light of G.L. 1956 §9-30-11 and the Supreme Court's decision in Sullivan v. Chafee,730 A.2d 748 (R.I. 1997), the joinder of these persons was necessary in order for plaintiffs to obtain the relief sought.
The Dowling Village Development
On or about November 9, 2004, the North Smithfield Zoning Board of Review granted a special-use permit to Defendant Bucci for a proposed land development project in the town. (Pl. Third Am. Compl. ¶ 100; Ans. of Bucci, et. al. to Pl's Third Am. Compl. ¶ 100, August 31, 2006 (hereinafter Bucci Answer.)) The proposed project, called Dowling Village, would be located on the Old Louisquisset Pike and the Eddie Dowling Highway in North Smithfield. (Bucci Answer, App. C, at 2.) The project consists of a mix of commercial retail, restaurant, and residential building space. (Bucci Answer, App. D. ¶ 5.) The proposed site encompasses land situated in the RA, RS, PS, and BH zoning districts as delineated on the map found in § 1.1 of the Zoning Ordinance. (Pl. Third Am. Compl. ¶ 97; Bucci Answer, App. D ¶ 1). These district labels stand for rural agricultural, rural suburban, professional service, and business highway, respectively. See
Zoning Ordinance § 5.1 (Jan. 1, 1995).
Plaintiffs contend that at least some of these proposed uses in the development are incompatible with the permissible uses in the various zoning districts. (Pl. Third Am. Compl. ¶ 102.) For example, restaurants are not permitted in the RA, RS, or PS districts. See Zoning Ordinance § 5.4.6(1) to (2b). To overcome this incompatibility, Bucci utilized the procedures for a "land development project." The Zoning Enabling Act allows towns to authorize land development projects in their zoning ordinances. G.L. 1956 § 45-24-24(a). The Plaintiffs, however, contend that the characterization of "land development project" as a "use" in the Zoning Ordinance renders it invalid because it is inconsistent with the Zoning Enabling Act. (Pl's Mem. Supp. Mot. Summ. J. 5-6.) They argue, as a result, that the various approvals obtained by Bucci for the proposed development wereultra vires and a nullity. Id. Alternatively, Bucci argues that the ordinance is valid and that Bucci complied with it. (Bucci Mem. Supp. Mot. Summ. J. 23-35.)
The Previous Lawsuit Against Bucci
After the Zoning Board of Review approved the Dowling Village project, two individuals, Caroly Shumway and Daniel Becker, filed a lawsuit against Bucci Development. See Bucci Mem. Supp. Mot. Summ. J, App. A, Compl. For Decl. and Injunctive Relief, Shumwayv. Benoit, C.A. 05-2082. That suit sought a declaration that would invalidate an amendment to the North Smithfield Comprehensive Plan. Id. ¶¶ 6-16. The amendment was a necessary step in the approval process in order to develop the Dowling Village project and was sought by Bucci in connection with the development. Summary judgment was entered in that case against Shumway and Becker. See Bucci Mem. Supp. Mot. Summ. J, App. C, Final Judgment, Shumway v. Benoit, No. PB-2005-2082, (Nov. 4, 2005). The preclusive effect of that judgment, if any, is at issue in this case.
The Various Claims, Counterclaims, and Cross Claims
Plaintiffs have brought one claim for declaratory relief, in which they seek declarations that § 5.4.12 is in excess of the authority granted in the Zoning Enabling Act, that the Certificates of Zoning Compliance, Master Plan Approval, and Special-Use Permit and Variances are null and void, and that Planning Board and Zoning Board of Review acted outside their authority in granting the various permits pursuant to the allegedly invalid ordinance. (Pl's Third Am. Compl. ¶ 106.) The Plaintiffs and Bucci have all moved for summary judgment on this Count. Bucci has also filed a motion to dismiss the Plaintiffs' claims on similar grounds as the motion for summary judgment. The Court will treat the motion to dismiss as a motion for summary judgment.
Finally, Bucci has responded with five counterclaims against Gagnon and Valley Alliance and two cross-claims against the Town Defendants for declaratory and injunctive relief.[2] (Bucci Answer). These counterclaims and cross claims are not specifically before the Court on the motions for summary judgment. However, some of the counterclaims and cross claims do relate to the substance of Plaintiffs' claim and to that extent, the Court will address them.
 Standard of Review
Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law." Super. Ct. R. Civ. P. Rule 56(c). The Court "does not pass upon the weight or the credibility of the evidence," but instead it must consider the evidence "in a light most favorable to the party opposing the motion." Palmisciano v. Burrillville Racing Ass'n,603 A.2d 317, 320 (R.I. 1992). "If there are no material facts in dispute, the case is ripe for summary judgment." Richard v. Blue Cross Blue Shield, 604 A.2d 1260, 1261 (R.I. 1992).
 Analysis
Before addressing the merits of this case, the Court must first determine whether either Plaintiff has standing to bring its claims. If there is standing, the Court must also determine whether the prior litigation, Shumway v. Benoit, has any preclusive effect on the current litigation. The Court will then examine whether the Plaintiffs' failure to exhaust their administrative appeals is a bar to the current litigation. Finally, the Court may address the merits of each party's various claims for relief.
Standing of Plaintiffs Gagnon and Valley Alliance
In order to have standing to bring suit, a person must have "alleged an injury in fact resulting from the challenged [act]."Rhode Island Ophthalmological Soc'y v. Cannon, 113 R.I. 16, 26,317 A.2d 124, 129 (1974). In making this determination, "the line is not between a substantial injury and an insubstantial injury. The line is between injury and no injury." Cummings v. Shorey,761 A.2d 680, 684 (R.I. 2000) (quoting Matunuck Beach Hotel,Inc. v. Sheldon, 121 R.I. 386, 396, 399 A.2d 489, 494 (1979)). Courts have overlooked the standing issue, though, when there is "substantial public interest" in deciding an issue before it becomes moot. Blackstone Valley Chamber of Commerce v. PublicUtils. Comm'n, 452 A.2d 931, 933 (R.I. 1982).
Here, Gagnon's allegation that the proposed development will adversely impact her property value meets the requirement of an injury-in-fact. See Pl's Third. Am. Compl. ¶ 91. This allegation is supported by an appraisal which analyzes, among other things, the effects of increased traffic in her neighborhood. (Pl's Mem. Supp. Obj. Bucci Mot. Summ. J., Exh. 2.) While the appraisal does not quantify the amount of this alleged harm, it is sufficient to cross the line from no injury to injury. See Cummings, 761 A.2d at 684. Moreover, given the large number of persons who will be affected by the requested relief and the likelihood that a similar case would be brought in the near future, the Court would be justified in overlooking the standing requirement under the substantial public interest exception. See Blackstone Valley Chamber of Commerce,452 A.2d at 933.
The Supreme Court has found that organizations have standing to sue on behalf of its members when those members are adversely affected. See East Greenwich Yacht Club v. Coastal ResourcesManagement Council, 118 R.I. 559, 565 (R.I. 1977); see alsoFriends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),Inc., 528 U.S. 167, 181 (U.S. 2000) (finding that an association has standing to sue on its members' behalf when (1) its members would otherwise have standing to sue in their own right, (2) the interests at stake are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.") Valley Alliance has alleged that, in addition to Gagnon, certain of its members are abutters or live in close proximity to the proposed development and will suffer harms similar to Gagnon. (Pl's Third Am. Compl. ¶¶ 90-91.) In addition, its mission statement — to pursue responsible development — is most applicable to this case.See id. ¶ 89. Therefore, this Court finds that Valley Alliance is an appropriate plaintiff to represent the interest of its members, who allegedly suffer the required injury-in-fact.
 Res Judicata and the Preclusive Effect of the Prior Lawsuit
The doctrine of res judicata involves both the concepts of issue preclusion and claim preclusion. Foster-Glocester Reg'lSch. Comm. v. Bd. of Review, 854 A.2d 1008, 1014 (R.I. 2004). It is claim preclusion that is applicable here.[3] Claim preclusion operates to bar "the relitigation of any issue that could have been litigated in a prior proceeding, including a direct appeal, that resulted in a final judgment between the same parties, or those in privity with them." Taylor v. Wall,821 A.2d 685, 688 (R.I. 2003). The purpose of this rule is to conserve judicial resources by preventing multiple lawsuits arising out of the same transaction. See ElGabri v. Lekas,681 A.2d 271, 275 (R.I. 1996). A non-party's claims will be barred by claim preclusion when there is identity of parties, identity of issues, and a prior final judgment. Id. at 275.
In this case, there was a final judgment entered in a prior proceeding. The judgment was rendered from the bench on October 6, 2005, well after the dates of the approvals which Plaintiffs contest here.[4] See Bucci Mem. Supp. Mot. Summ. J, App. C, Final Judgment, Shumway v. Benoit, No. PB-2005-2082, (Nov. 4, 2005). Therefore, the claims raised in this proceeding could also have been raised in the prior proceeding and there is sufficient identity of issues. However, neither Valley Alliance nor Lisa Gagnon was a named plaintiff in the initial litigation. Therefore, whether there exists sufficient identity of parties depends on whether Valley Alliance or Gagnon are in privity with the parties to the first litigation. If so, then their claims are barred for not having been raised in the earlier litigation.
A non-party to a prior judgment will be bound by it if the non-party controlled, substantially participated in, or was represented in the prior litigation. See Restatement (Second) Judgments §§ 39, 41 (1982), cited by Commercial Union Ins. Co.v. Pelchat, 727 A.2d 676, 680 (R.I. 1999). Because it is Bucci who seeks summary judgment on the basis of claim preclusion, the Court must resolve all factual disputes in the light most favorable to the Plaintiffs. See Palmisciano,603 A.2d at 320.
Here, Bucci alleges that the interests of Valley Alliance were represented by Shumer and Becker, the plaintiffs in the initial litigation. (See Bucci Mem. Supp. Mot. Summ. J. 15-17 Apps. K, N.) According to the depositions cited by Bucci, it appears that Shumer is the chair of the Valley Alliance Board of Directors, participates in the fundraising activities of Valley Alliance, and was involved in its incorporation. See id.
While courts generally will not treat an action in which a director participated as having preclusive effects on a future action by the corporation,[5] an exception to this rule exists for close corporations of which the control is concentrated in the hands of a few owners. See Restatement (Second) of Judgments § 59 (1982). Taking the facts in the light most favorable to Valley Alliance, however, the Court cannot find that Shumer sufficiently controls Valley Alliance. As it is now constituted, Valley Alliance consists not only of Shumer's interests but also that of its 167 members. See Pl's Third Am. Compl. ¶ 2. While Valley Alliance likely has interests in common with Shumer and Becker, the mere potential for conflicting interests is sufficient grounds to justify the rule that the non-close corporation will not be bound by acts of its members or directors. See Restatement (Second) of Judgments, § 59 Com. e (1982). Therefore, the Court will not find privity between Valley Alliance and the prior litigants. See id. § 59(c).
Similarly, there is no privity between Gagnon and the two individual parties to the original litigation because it has not been shown that Gagnon controlled or substantially participated in the first litigation, or was represented by the parties in that litigation. See Restatement (Second) Judgments § 39, 41 (1982). The Court is concerned with the allegation that Gagnon is merely a decoy to avoid res judicata, given that Gagnon's fees are paid by Valley Alliance and she allegedly has limited contact with her attorney. See Bucci Reply Mem. to Pl. Mot. Summ. J. 10-12. A person should not be able to get a second bite at the judicial apple merely by causing another to file a second lawsuit at another's behest — or by incorporating for that matter. All that has been shown, however, in the light most favorable to Gagnon, is that she made small financial contributions to Valley Alliance while it was still an unincorporated association and had no control over the conduct of that litigation. See Pl's Supp. Mem. Supp. Mot. Summ. J., Aug. 4, 2006. The Court will not deny Gagnon her day in court because these facts are insufficient to find that she substantially participated in that litigation, or was represented by the parties in that litigation. Because there are insufficient grounds at this stage of litigation to find privity between Gagnon and the prior litigants, the res judicata argument must fail.
Exhaustion of Administrative Appeals
The Zoning Enabling Act prescribes that ordinances will contain certain specific appeal procedures for challenging the decisions of local boards. See G.L. 1956 § 45-24-63 to -69.1. Decisions of the building inspector or planning board may be appealed to the zoning board of review. See id. An "aggrieved party" may then appeal a decision of the zoning board to the Superior Court within twenty days. Section 45-24-69(a). Bucci contends that the Plaintiffs' failure to exhaust these administrative remedies should bar their present claims. Plaintiffs respond that they could not have obtained relief from the Zoning Board, because the Board does not have the authority to find the Zoning Ordinance invalid. Rather, an action for declaratory relief was the only option available, and therefore, participation in the zoning hearings would have been futile.
This Court agrees with the Plaintiffs. In a case strikingly similar to the case at bar, the trial judge granted the purchaser of land declaratory relief from a zoning ordinance on the basis that it was an unconstitutional taking. Annicelli v. SouthKingstown, 463 A.2d 133, 135 (R.I. 1983). The town appealed to the Supreme Court arguing that the plaintiff had failed to exhaust his administrative remedies by seeking a variance or special exception from the zoning board as opposed to declaratory relief. See id. at 137. Because the landowner's challenge was a facial challenge to the validity of the ordinance itself, however, the Court would not "forestall a judicial inquiry when the ordinance is challenged as patently invalid." Id. at 138;[6] see also M.B.T. Constr. Corp. v. Edwards,528 A.2d 336, 338 (R.I. 1987) (holding that a zoning board cannot entertain questions about the validity of an ordinance itself). Likewise, the Court will not bar Plaintiffs' claims here because of a failure to exhaust administrative remedies, when the Zoning and Planning boards could not have found the ordinance invalid.
Land Development Plans
Having disposed of the various preliminary issues, the Court now addresses the merits of the Plaintiffs' claims. These claims focus on the interaction between G.L. 1956 § 45-24-47 and § 5.4.12 of the Zoning Ordinance, both of which pertain to land development plans (LDPs). LDPs are defined in the statute as
 "projects in which one or more lots, tracts, or parcels of land are to be developed or redeveloped as a coordinated site for a complex of uses, units, or structures, including, but not limited to, planned development and/or cluster development for residential, commercial, institutional, industrial, recreational, open space, and/or mixed uses as may be provided for in the zoning ordinance." Id.
If a town allows LDPs, an applicant must seek approval from the town planning board under the procedure established for subdividing land. See G.L. 1956 § 45-24-47(b) (referring to the subdivision procedures in Title 45, Chapter 23). The LDP ordinance "may include, but is not limited to, regulations governing" lot sizes, uses permitted within the development, ratios of residential to non-residential uses, and various other types of regulations. Id. § 45-24-47(c).
North Smithfield's Zoning Ordinance allows LDPs, but the manner in which the Ordinance does so is hotly disputed by the parties. The uses allowed in each zoning district appear in tabular form in the Zoning Ordinance. See § 5.4.12. On the left portion of the table are descriptions of the various uses to which land could be put. See id. On the right portion of the table is a letter which designates the status of the use for each of the nine zoning districts — Y if the use is permitted, YT if the use is permitted temporarily, N if the use is not permitted, and S if the use is permitted only by special permit. See id. Because the exact appearance of the use table is important to its interpretation, the relevant portion is reproduced below: Section 5.4: District Use Regulations
 --------------------------------------
 | District |
 |------------------------------------|
 |REA| RA| RS| RU| PS| BN| BH| LC| M |
|----------------------------------------------------------------------------------|
| [Sections 5.4.1 to .11 omitted.] |
|----------------------------------------------------------------------------------|
| 5.4.12. Land Development Project | | | | | | | | | |
| | | | | | | | | | |
| Planned development where both municipal | N | S | S | S | S | S | S | N | S |
| water and sewer are existing. | | | | | | | | | |
|----------------------------------------------------------------------------------|

Zoning Ordinance § 5.4.12 (footnote omitted). Additionally, the Ordinance provides a definition of "land development project" which is identical in all material respects to the definition provided in the Zoning Enabling Act.[7]
Plaintiffs argue that the inclusion of land development projects in the use table is not authorized because an LDP is not a use as defined in the Zoning Enabling Act. Therefore, § 5.4.12 and any permits issued under the Ordinance would be null and void. (Pl. Mem. Supp. Mot. Summ. J. 6.) Bucci argues that the Ordinance is valid and by proceeding under it, Bucci only needed a special permit for its proposed development and need not comply with the other zoning restrictions in the rest of the table. (Def's Mem. Supp. Mot. Summ. J. 23-35.)
A use is defined as the "purpose or activity for which land or buildings are designed, arranged, or intended, or for which land or buildings are occupied or maintained." G.L. 1956 §45-24-31(60). The definition of LDP is a coordinated site to be redeveloped for a complex of uses. See id. § 45-24-47(a) (emphasis added). An ordinance may define which uses can be included in an LDP. See § 45-24-47(c).
The rules of statutory construction apply to municipal ordinances, Mongony v. Bevilacqua, 432 A.2d 661, 663 (R.I. 1981), and the court is obliged to interpret a municipal ordinance as valid if possible, Carlson v. Town of Smithfield,723 A.2d 1129, 1131 (R.I. 1999). In addition, Bucci has cited several cases for the proposition that, so long as there is no conflict with the Zoning Enabling Act, a board's interpretation of its own ordinance must be given great weight. See e.g.,Davis v. Zoning Bd. of Review, 93 R.I. 484, 488 (R.I. 1962) (noting that where an undefined term exists in an ordinance, the board has wide discretion in determining its meaning). While Plaintiffs may be correct that an LDP is not the same thing as a use, and while the Zoning Ordinance may not be a model of clarity, the Court disagrees with the Plaintiffs that the designation of LDP as a use conflicts with the Zoning Enabling Act in some way.
The Court finds that the proper interpretation of the Zoning Ordinance is to incorporate the "residential, commercial, institutional, recreational, open space, and/or mixed" uses, which make up the definition of LDP, see Zoning Ordinance § 20.1, into the Ordinance at § 5.4.12. A clearer ordinance might read under § 5.4.12 that "residential, commercial, institutional, recreational, open space, and/or mixed uses which qualify as a land development project, and where both municipal water and sewer exist" are allowed by special permit. As a result, a proposed development can comply with the Zoning Ordinance in two ways. The first is to comply with the table of uses in §§ 5.4.1 to 5.4.11. Second, if the project qualifies as an LDP and is situated in one of the seven districts where LDPs are permitted, then the developer may comply with its obligations by seeking a special permit under § 5.4.12 and following the other procedures for LDPs. See G.L. 1956 § 45-24-47(b) (providing that LDPs be approved by the local planning board according to the procedures for approving subdivisions).
As interpreted in this manner, the Court finds no conflict with the Zoning Enabling Act that would invalidate the ordinance. This interpretation is in accord with G.L. 1956 § 45-24-42, which pertains to special-use permits. This statute provides that the Zoning Ordinance shall describe the conditions and procedures, and establish criteria, for the issuance of special-use permits for the various categories of special-use permits established in the Zoning Ordinance. See § 45-24-42(a)(2), (3). Plaintiffs argue that there are no conditions, procedures, and criteria for special-use permits for LDPs. (Pl.'s Mem. Supp. Mot. Summ. J. 9.) However, there are conditions, procedures, and criteria for the various uses which may comprise an LDP. See Zoning Ordinance § 5.6.3.6 (relating to commercial shopping centers), § 5.6.3.7 (multi-family dwellings); see generally § 5.6.3. In addition, there are general regulations for situations requiring a special permit which are not specifically addressed. See id. § 9.2. The Zoning Board found that the proposed development complied with these obligations. (Bucci Mem. Supp. Summ. J. App. I, Zoning Bd. Decision Granting Special Use Permit and Dimensional Variance, November 9, 2004.)
The Plaintiffs also contend that this interpretation of the Ordinance confers too much discretion on the Zoning and Planning Boards, relying upon Bailey v. Zoning Bd. of Review of the Cityof Warwick, 179 A.2d 316 (R.I. 1962). In Bailey, the Court invalidated a city ordinance that purported to authorize certain specifically enumerated uses solely on the approval of the Zoning Board. Id. at 316. Because the ordinance did not contain any of the statutory safeguards for variances or special exceptions, "the city council . . . has undertaken to confer upon the board a broad unrestricted power to allow or disallow in its discretion any of the enumerated uses." Id. at 316-17. Therefore, the Court found the ordinance to be an invalid delegation of the legislative power conferred upon the town council. Id.
Plaintiffs' argument must fail. First, the Zoning Ordinance does not grant unbridled discretion and authority to the boards as did the ordinance in Bailey. See 179 A.2d at 316-17. Their discretion is curtailed by § 5.4.12, which restricts the availability of LDPs to seven of the nine zoning districts on sites where municipal water and sewer exist. Second, the Bailey
ordinance only dealt with the statutes pertaining to variances and special-use permits. In the case at bar, a separate provision of the Zoning Enabling Act, G.L. 1956 § 45-24-47, provides the authority to approve LDPs independent of the process for variances and special exceptions. See id. at 316-17. The LDP statute requires the developer to comply with the statute for adopting subdivisions "and with any ordinances or regulations adopted pursuant to the procedures, whether or not the land development project constitutes a `subdivision.'" See G.L. 1956 § 47-24-47(b) (referring to G.L. 1956 § 47-23-25 to 74). This process, which is mandated by statute, further curtails the discretion of the boards. It is uncontested that Bucci has complied with those requirements.
The participation of the Zoning Board, while not required by statute, serves as an additional check against the exercise of uncontrolled discretion. See Carlson v. Town of Smithfield,723 A.2d 1129, 1132 (R.I. 1999) (upholding an ordinance which required the participation of the zoning board in the LDP process even though the statute did not specifically call for it). Plaintiffs may be dissatisfied with the legislative decisions embodied in the Zoning Ordinance, but since the Court finds that the ordinance complies with the Zoning Enabling Act, their recourse is to the Town Council and not to this Court.
 Conclusion
The Court has duly considered the arguments advanced by counsel at oral argument and in their memoranda. On the basis of the foregoing, the Court denies Plaintiffs' motion for summary judgment on its claim for declaratory relief and grants the motion for summary judgment on this claim in favor of Defendant Bucci. The Court also grants summary judgment in favor of Bucci on Count V of its Counterclaim, and Count II of its Cross-Claim against the Town Defendants, which seeks a declaration that § 5.4.12 is valid and in compliance with the Zoning Enabling Act.
Counsel for Bucci shall present an appropriate order and judgment consistent herewith which shall enter upon notice to all other counsel of record and an opportunity to be heard.
[1] Due to confusion from a change of counsel, the pleading named "Second Amended Complaint" is actually the third version of the pleading. The Court ordered that the pleading which appears as Exhibit A to the Plaintiffs' August 1, 2006 motion shall be referred to as the Third Amended Complaint. (Ord. Granting Pl's Mot. for Leave to Am. Compl., Aug. 17, 2006).
[2] The five counts of Bucci's counterclaim seek 1) a declaration that equitable estoppel and laches apply to Plaintiffs' claims; 2) a declaration that res judicata and collateral estoppel bar plaintiffs' claims; 3) a declaration that the permits issued by the towns are final; 4) injunctive relief against the Plaintiffs; and, 5) a declaration that § 5.4.12 of the Zoning Ordinance is valid. The cross-claims asserted against the town are similar to counts three and five of the counterclaim.
[3] The Court agrees with Plaintiffs that collateral estoppel, or issue preclusion, does not apply because any factual or legal issues that were decided in the first case are only minimally relevant here. However, even if the new claims are legally and factually distinct, claim preclusion may still apply if the claims could have been raised in the prior litigation.
[4] The relevant approvals are contained in Bucci's Appendix and Exhibits to its Memorandum of Law in Support of its Motion for Summary Judgment, dated April 21, 2006. It appears from these documents that the Master Plan Approval was issued on July 7, 2004. (Exh. G.) The Special-Use Permit and Variances approval was issued on November 9, 2004 and was modified on January 18, 2005. (Exh. I, J.) Certificates of Zoning Compliance were issued on March 30, 2004 and January 18, 2005 respectively.
[5] "[T]he corporation should not be concluded by the determination of issues in an action to which its officers, directors, stockholders, or members of the corporation are parties in their individual capacities. . . . The interests of such persons in their individual capacities are distinct from and sometimes in conflict with those of the corporation. . . . Although in many instances there is no such conflict of interest, its potential is sufficiently great to justify, on grounds of ease and clarity of administration, a rule that the corporation is not bound even as to issues in which it is clear that no conflict of interest exists between it and the officers, stockholders, or others who were parties to litigation in which those issues were determined." Restatement (Second) of Judgments, § 59 Com. e (1982).
[6] "[I]t would have been futile for the complainant to have appealed to the board of review because the board lacked authority to grant the relief sought. `In such circumstances, the courts will not deny judicial relief on the ground that one invoking its protection has first failed to do that which would be futile.'" Annicelli, 463 A.2d at 138 (citations omitted).
[7] "LAND DEVELOPMENT PROJECT. A project in which one (1) or more lots, tracts, or parcels of land are to be developed or re-developed as a coordinated site for a complex of uses, units, or structures, including but not limited to: planned development and/or cluster development for residential, commercial, institutional, recreational, open space, and/or mixed uses as may be provided for in the Zoning Ordinance." N. Smithfield Zoning Ord. § 20.1. Note that, unlike the statutory definition found in G.L. 1956 § 45-24-47, industrial uses are not included in the definition of LDP found in the Ordinance.